1932-1934, Gennaro Bernardino Murillo v. William P Barr Arguments not to exceed 15 minutes per side Mr. Summers for the petitioner May it please the court Good morning, your honors. My name is Blake Summers. I represent the petitioner in this case, Mr. Gennaro Bernardino. We're here today on Mr. Bernardino's petition for review of final order of the Board of Immigration Appeals. We're requesting that the matter be reversed and remanded for further proceedings. Your honors, may I reserve, please, three minutes for rebuttal? You may. Thank you, your honors. As this court is aware, my client has been a resident of the United States for about 20 years. He's a native and citizen of Mexico. He's been here since about 1998. He's been married to the same woman for 10 years. He's lived in the same house in New Carlisle, Ohio for 15 years. He has eight U.S. citizen children, one of them from a first wife, and then four biological children with his wife. I'm sorry, one of them for a prior relationship. Four from his current wife and three that he adopted out of some significant problems with abuse, both from the children's biological and adoptive parents. He applied for cancellation of removal in his administrative removal proceedings. That was denied at the Cleveland, Ohio Immigration Court. He was ordered removed to Mexico. He appealed to the Board of Immigration Appeals, which affirmed the immigration judge, and that brings us here today. We've submitted, judges, that the case should be reversed and remanded for three principal reasons. One, that the agency below erred in allowing a substitute immigration judge to make a credibility determination on Mr. Bernardino's case. Two- Was that brought up before the BIA? Not the specific argument that was brought before the Sixth Circuit. Counsel at the BIA does raise the issue, well, the fact that there was a substitute immigration judge appointed, but the due process issue that was raised in front of this honorable court in the briefings, I think we have to acknowledge, was not briefed in front of the board. That kind of puts us in a bind because the statute clearly requires exhaustion, and our cases have even said that the exhaustion requirement is jurisdictional. Jurisdictional requirements are, those are the most inflexible types of requirements, so do you have any theory for why your argument in the BIA should somehow be interpreted to encompass the argument that you're presenting today? Judge, thank you. I do, I kind of assumed we would get to exhaustion pretty quickly. That's obviously in front of the court. The issue is that under 8 U.S.C. 1252 D.1, there's an administrative exhaustion requirement that exists to get from the BIA to an issue in front of the Sixth Circuit. I think there's some room on a couple levels for a potential relaxed standard on that administrative exhaustion requirement. Now, interestingly enough, just yesterday, this court released a decision with a concurrence that talks about administrative exhaustion. This court is probably keenly aware of it. It was actually authored by Judge Murphy in terms of the concurrence. I understand it's just a concurrence, but I think it gives us some interesting perspective in terms of how we might seek to view administrative exhaustion at this point. I think the concurrence and the judge, obviously, I'm not going to explain the opinion to its author, but obviously the question is posed, is this a jurisdictional rule or is this a claims processing rule? We've gotten a lot of indications from the Supreme Court over the past couple of years that perhaps we're over-utilizing the idea of jurisdiction, and we should be looking at things more of a claims processing rule. The concurrence talks about the two different approaches and then ultimately concludes that perhaps the claims processing rule is the better way to view administrative exhaustion. I obviously might agree with that view, but we have a lot of cases going the other way, number one. Number two, even if that is the accepted view, where that really matters is where the government doesn't raise an exhaustion defense, and here, even if it's mandatory and not just jurisdictional, we have a duty to consider arguments raised by the government. I don't know if that debate between whether it's mandatory or jurisdictional gets you all that much because the government clearly raised the exhaustion defense in this court. Absolutely correct. I think that may be the last paragraph in the concurrence, kind of suggesting that this might not be as watershed of a consideration as we're thinking because it could still be a statutory defense. I think I found this case at 3 o'clock yesterday just in review before I came here, but in thinking about claims processing, that gets us more into the prudential area of whether something can be considered. Here the parties, although there's been an exhaustion defense raised, the parties have briefed it on the merits. It certainly seems to be germane to the issues in front of the court, so if we're in the area of claims processing rules rather than in the area of jurisdictional bars, I think it allows the court a little bit more flexibility in saying, should we address this argument at this time, and if it's claims processing, I think the court then can make that decision and say, I think we are going to address it at this time. I think, if I can, because again, I knew exhaustion was going to come up, I looked at this yesterday. I wanted to maybe add one more piece of food for thought on this particular issue. My philosophical idea about the idea behind exhaustion is that we want people to bring things up in the first instance, so the trial court, whether it be agency or district court or state court, has an opportunity to correct error in the first instance, and that assumes they're going to, right? I took a look at some information on the Board of Immigration Appeals website yesterday because there's a case from Judge Posner a bunch of years ago talking about workload, and I think it adds a level of concern and something to think about when we're considering whether or not to view exhaustion as claims processing or jurisdictional. So as of October 23rd, from January 1st of this year to October 23rd, the Board of Immigration Appeals has completed 26,272 cases. The BIA has, I believe at most, 21 members, which means that in the first 10 months and 23 days of this year, assuming full staffing, each judge completed 1,251 cases. How is that relevant to this case? I'm not sure I follow you. Well, I think what we're talking about with respect to administrative exhaustion is that we're relying on an agency to do its job, and we're relying on an agency to make sure that issues that are brought up before it are decided. And with the workload that we have at the BIA, I think there are some concerns about whether or not that's possible, and whether or not one judge who's issuing 1,251 decisions, assuming there's 21 people working on them at all times, is sufficient to decide all those claims. Even in this case, you know, we see a bit of a punt from the Board of Immigration Appeals. So we have a couple issues that the immigration judge raises, right? He talks about good moral character, he talks about discretion, he talks about hardship, he talks about credibility. The Board of Immigration Appeals doesn't even really address the idea of hardship. So even here, we can see that the BIA is not necessarily addressing all of the issues that are brought in front of it, even when hardship was clearly briefed by Mr. Bernardino below. Well, can we transition to the merits? Absolutely. How would you, how is it that your position would not invalidate the common, very common component of a magistrate having a hearing, federal magistrate, holding a hearing in a criminal context, and the magistrate makes recommendations to the district court? The district court is the one who actually engages in the fact-finding, and the district court did not attend the hearing, and so did not witness the witness, and able to view the witness for purposes of the credibility determinations. It seems to me your argument could almost be revolutionary in terms of the common practice of magistrate judges making recommendations to district courts. Off the top of my head, I think the magistrate judges issue a report and recommendation that would, because I didn't specifically look at how it would apply to magistrate judges, so I'm just kind of going off of general knowledge. I think the magistrate judges would issue a report and recommendation that as a trier of fact, would include the credibility assessment based on the demeanor of the witnesses that the district court is then either free to adopt, reject, or I think perhaps rehear, although I may be mixing state and federal magistrate rules. That's just off the top of my head. I think the analogy that was in my mind was that of a trial court assessing ability versus, I'm sorry, assessing credibility versus a court of appeals reviewing credibility on a cold record, which is kind of what I think we see in this case. We have one judge who tries it, and then another immigration judge over five years later who comes in and decides it and makes some credibility determinations based on that cold record. I don't think we have to look real far in the Sixth Circuit jurisprudence to see examples of cases where we want to rely on the trier of fact. There's this great case from back in April. I think it's Nolasco-Gonzalez v. Barr, and it's talking about these core competencies of trial courts versus courts of appeals. The courts of appeals are about interpreting language, and the trial courts are about interpreting behavior. They say that's their core competency. That's what the immigration judge should be doing, and we shouldn't be allowing a substitute immigration judge to make a demeanor-based credibility determination simply on a cold record, especially where it appears that there was some demeanor-based credibility determination going on. So if you look at the transcript of proceedings, I think it's around pages 200-202 of the Certified Administrative Record, the immigration judge is engaging Mr. Bernardino about this issue about whether he was using an additional Social Security number to obtain employment, how long he had used it, and the immigration judge, the way I read it, gets almost like a little paternal. He says, oh, you know, you really shouldn't be trying to color your testimony. You really need to give us the 100% truth here. Mr. Bernardino says, oh, everything changed when my daughter was born. And so in my mind, this guy's kind of encouraging Mr. Bernardino to take a more forthright approach, right? I'm sure there's another view of it where the judge is sternly admonishing Mr. Bernardino to tell the truth, and he's kind of cowering in the corner. But I think the idea that even when I'm looking at it, you can have two different readings of this is perhaps the reason why there's a defect in the proceedings at all, is that we can't really tell from a cold record the demeanor-based credibility assessment that Mr. Bernardino is frankly entitled to. And if there's a defect as a due process claim, then I think there's prejudice even from the face of the opinion itself. So if you look at it, the immigration court denies his claim first on a basis of just an adverse credibility finding. This wasn't in the brief, but finally only last night did I figure out why that's weird. It's more of a bottom standard than a cancellation of removal standard where you just landslide lose on credibility. But even assuming that, from the face of the decision, there's at least prejudice in terms of the fact that the court says it's going to deny it based on an adverse credibility determination. But then this adverse credibility determination comes in not only in the good moral character analysis, but also in the hardship analysis, which we've briefed separately as being inappropriate, and then again in the discretionary analysis. So this one demeanor-based credibility assessment that goes into the substitute judge's decision affects not only his initial assessment of the case, but also his assessment of all three prongs which are held against Mr. Bernardino in terms of denying his claim for cancellation. So is there, you cite a lot of cases in your brief. Is there one or two cases that you really want to focus our attention on to support your adverse credibility determination issue? You got the cases. I mean, there was a due process argument raised, but it just wasn't this one below. And I just wonder if there's any one case that you think would be most apposite or analogous to this issue. Your Honor, I see my time has expired. Yeah, you may answer. Thank you. So I don't know that we actually found a case that succinctly says this is a due process violation. Now, we've cited in our brief a couple of cases that found that there was no due process violation, and we've sought to distinguish them. So that's the Benegas case out of the Third Circuit, the Romero case out of the Tenth. There's an Abdullahi versus Holder, which I don't think is cited in our brief, but it forms the basis of the Third and Tenth Circuit's decisions, the Benegas and Romero. Then obviously we have Gaye versus Lynch, which is a little interesting because Gaye actually finds that it's an unpreserved issue. And so the panel in discussing it says, we don't have jurisdiction to address this. And it kind of addresses it anyway, so I think there may be perhaps some unintentional dicta in Gaye. But then obviously Gaye also has the really long dissent, which was issued by Judge White, which at least forms conceptually the basis of some of what Mr. Bernardino is arguing here today. So I don't think there's a case that we found that specifically says a substitute immigration judge making a demeanor-based credibility determination is a due process violation, but those are the cases that I think suggest it. Thank you. You'll have your full rebuttal. Your Honor, thank you very much. May it please the Court, Your Honors, Tim Ramnitz on behalf of the United States Attorney General. The petitioner described brings two claims before the Court. The first is his due process claim, and the second is a claim that there was legal error in the immigration judge's good moral character finding. First claim, due process, is clearly not exhausted. Before the board of immigration appeals, he raised a due process argument, but it stated that the immigration judge overlooked his closing statement. It did not state that the immigration judge should not have presided or rendered an adverse credibility determination without presiding over the merits hearings. This Court stated in Gaye, that's the exact kind of claim you have to exhaust before the board, because that was the same claim made in Gaye. And because that petitioner in Gaye didn't bring that claim before the board, it was not exhausted, and the Court could not consider it as a matter of jurisdiction. So could you arguably say Gaye is distinguishable because there he raised the same fact of not a credibility of a separate IJ, but just didn't put it in due process language? Whereas here, at least everybody agrees he raised a due process argument. It just may not have been as focused on the second IJ as on what his closing argument or not considering his closing argument. I don't see any difference in the claims made in Gaye. It was simply not a retired judge, it was a judge who recused himself. And then a substitute immigration judge came in and rendered an adverse credibility determination. And that's what happened here, it's just that the judge retired instead and that had to be exhausted. And Gaye even rejected petitioner's claims to try and fit their arguments into what they raised in front of the BIA challenging their adverse credibility determination. That's what appears, at least from Gaye, it doesn't provide a lot of analysis in that regard. It doesn't say exactly what he raised in front of the board, but it rejected its attempts to fit his arguments into what he raised before the board. So I would say it's clearly not exhausted, but even if you get to the merits of the due process argument, there's no rule that prevents a substitute IJ from rendering an adverse credibility determination on a cold record. And as this panel noted, that is something that's commonly done by many judges. When you review an adverse credibility determination, you look at a cold record and see if the inconsistencies are supported. That's what the Board of Immigration Appeals does, that's what this court does. Is there a real good case that you're depending upon for that proposition? I would say the cases that petitioner has cited where he's distinguishing when it could possibly be a due process violation for a substitute immigration judge to come in, those are good cases to look at because they state that there's only perhaps one factor where it could be a due process violation, where they render a demeanor finding. There was no demeanor finding in this case. Petitioner cited in his argument an exchange from the merits hearing, but that wasn't cited by the immigration judge who rendered the adverse credibility determinations based solely on inconsistencies that appeared in the transcript. So that attempt to distinguish those cases has to fail, but I would even note that it would always be based on the particular facts of the case because even a demeanor finding can be clear on the record of a transcript. There can be an immigration judge that notes in the transcript that someone is being evasive or a witness is taking a long time to answer and sometimes they'll say, let the record show, petitioner has taken a long pause before answering. So you could still make a demeanor finding on a cold record even there. So I don't believe any due process claim for a substitute immigration judge rendering an adverse credibility determination based on a cold record would always be based on the particular facts and circumstances of the case, even when it comes to demeanor. You don't have a case that's really kind of on all fours for this. I have no case that's ever found a due process claim to be valid in this regard or rejected one specifically, just a guy which said you had to exhaust this first. So in that regard, I'd also say there's just, even if it was exhausted, the claim lacks merit because there's no error in the immigration judge's regard because it wasn't a demeanor finding. If there was, that could be supported by the record in other cases. And also, Fisher hasn't pointed any prejudice as far as due process. You don't see arguments in his opening brief discussing how the adverse credibility determination was erroneous. He raised that before the board, but he's not raising that before the court. So I believe that in the end, due process claim must fail for multiple reasons. And that really leaves only the good moral character finding. And the claim is brief. There's legal error in the good moral character finding. Can I ask you a question about the way I read the text of 1229b-1b, it seems like the BIA may have adopted a rule that, in some respects, departs from the text when determining the 10-year period. The way I read the 10-year period is supposed to be a look-back period from the date of the application, the date of the cancellation of removal application. And here, I guess the BIA has a decision, seems pretty unanimous, that suggests that the look-back period starts from the date of its decision. And I wonder how that, I guess it's not raised here, so it doesn't really matter. But I mean, I was just looking on the face of the good moral character statute, and that's the way I would read that statute. So I wonder if you could just opine briefly on that, if you actually know what I'm talking about. There's a board decision called Matter of Ortega, which I believe the immigration judge cites. And that states that they're interpreting the good moral character period to run backwards from the final administrative decision, which would be the board's decision in this case. But do they have any? So it says, has been physically present in the United States for a continuous period of not less than 10 years, immediately preceding the date of such application. And then has been a person of good moral character during such period. So such period, the such is a pronoun, the antecedent is, I think, looking back to the prior one, and the 10-year period is from the date of such application. So I know we're supposed to give deference to the BIA on things like this, but that deference collapses when the BIA adopts a rule that seems to be inconsistent with plain language of the statute. It's been a while since I've read Matter of Ortega, but I believe a lot of the reasoning was that the old rule, which is cut it off at the service of the NTA, didn't make a lot of sense. Because then you'd have someone who could conceivably do bad acts or render false testimony throughout their time for the immigration court, and that could not be used for finding good moral character. They found that to be nonsensical, and so you had to keep running the period up until the final administrative decision. So therefore, if there was anything that came up during rule proceedings, for example, new arrests, new convictions, that could be used for good moral character because it didn't make a lot of sense to cut off the most recent bad acts. Yeah, so it's like a policy-based argument that it just... I believe it was. I don't believe as much... I don't know how many courts have deferred to Matter of Ortega. I believe the Fifth Circuit has, but I'm not sure if there's... But it doesn't really matter in this case. Not in this case, but I believe that was what the reasoning was. So when we look to good moral character, we don't really have to actually get to good moral character because petitioners... That's one component of his cancellation removal application. Good moral character, hardship, and then his overall discretionary denial, which the petitioner doesn't challenge as an opening brief. And that's dispositive of the issue because that's a rule in this court that lacks jurisdiction to consider. Petitioner doesn't challenge it, and that's another dispositive component of his application. So we don't have to get to good moral character. What's your best case for the discretionary balancing, even if you are eligible, falls within the generic no jurisdiction to review, cancel of removal? 1252B2 jurisdictional bar for the overall discretionary termination. For the balancing. Assuming he is eligible. I don't have it in front of me, but I believe a brief cites the case. And other courts, I think it's been unanimous, the courts have applied that discretionary bar to not just that cancellation overall discretionary termination, but many forms of relief that require that final discretionary act, asylum, and adjustment status similarly. Those are jurisdictionally barred by 1252A2BII, I believe. Does the panel have any further questions? Apparently not. Thank you. Your Honors, thank you. If I could, I should have offered this when we were talking about the Soleil case that came out yesterday. I was not intending to file like a 28J letter unless anybody feels that it's necessary. The court wants me to supplement. I certainly can't. But with Judge Murphy authoring the concurrence, I figured it was probably in front of the court well enough. That's fair. Thank you, Judge. So even assuming the issues about discretion and the, I'm sorry, not discretion, but Mr. Bernardino's favor, I think the court can still reverse and remand both on the good moral character issue and on the hardship issue because I believe there's legal error in both. So as to the good moral character, you were just talking with Respondent's counsel about this idea of the 10-year look back period. I think Respondent was fairly accurate with his recitation of why matter of Ortega Cabrera kind of reasons that it goes all the way to the date of the final hearing. I think there was also an analogy to old school suspension of deportation that also ran kind of a similar timeline. I'm also doing that from memory. But it seems like you've conceded that that is the relevant date. And your argument on the good moral character point is that with that as the start date, because of the big gap between application and decision, that some of the stuff in the earlier period isn't covered. That's exactly right. I mean, either his date would end in 2007 because the administrative decision from the immigration judge comes out in 2017. In which case, if that was true, then a lot of the findings with respect to what happened at the hearing, which formed the basis of no good moral character, wouldn't be counted because it would fall in between. It would come after the application, so not fall within the look back period. That's exactly right. They're all outside the look back period. But it seems very clear, even from the face of the BIA's decision, that they are considering them and assessing the case. It also comes in when they're assessing hardship. And that kind of leads us to that idea was that the hardship analysis performed by the BIA is also flawed. Because what they do is they say, well, I'm sorry, the hardship analysis conducted by the immigration judge, not the BIA. The immigration judge says, well, there's some hardship here, but it's not enough to outweigh some of these negative discretionary factors. And he does that within the hardship analysis, which is not correct under the statute. We don't have a balancing test on hardship itself. You have a standard to meet, but it's not balanced against anything else. And I think if we take it in reverse, I think the department would probably even resist that. Because let's say we have somebody who has not much hardship, but really, really blemishless moral character. That person would come into court and say, look what a great guy I am. I shouldn't have to show you as much hardship. And the department is going to say, whoa, no, you still have to demonstrate hardship. But why does any of that matter? Because of the government's point that there's no jurisdiction to review the discretionary balancing. And that's clearly the reasoning on which the BIA relied. So I would distinguish between discretion as it relates to hardship, which was balanced, which we would say is legally inappropriate. But assuming the hardship factor, so you're eligible, there's still a discretionary component on the back end. Because these types of relief, this type of relief is always discretionary. My time having expired, if I can respond. Thank you. Your Honor, I think that's actually where the credibility issue comes back in. Because if the credibility issue is reachable and incorrect, the credibility issue also is what really informs the court's discretionary analysis. And I think if there's legal issue that creates error in that part, this court still has the ability to remand, even though there was a discretionary issue that was raised, there's still a legal issue about it that the court, I believe, has jurisdiction to review. So with that, I think whether it's on the discretionary issues itself or on the substantive issues related to Mr. Bernardino's hardship, good moral character, discretion, or otherwise eligibility for cancellation and removal, we respectfully request that the court reverse and remand for further proceedings. If the panel has any other questions, I'm happy to answer. I don't think we do. So thank you very much. Your Honor, thank you so much for your time. We appreciate the arguments from both of you today.  And you may call the next case. Thank you.